**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ELDIMIR GOMES,

               Petitioner,

    vs.

MICHAEL BERNAKE, *et al.*,[1]

            Respondents.

Case No.: 2:26-cv-00420-GMN-MDC

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner Eldimir Gomes's First Amended Petition for Writ of Habeas Corpus, (ECF No. 9). Federal Respondents Michael Bernacke, Pamela Bondi, Todd M. Lyons, and Kristi Noem filed a Response, (ECF No. 14),[2] to which Petitioner replied, (ECF No. 15). For the reasons discussed below, the Court GRANTS the Petition and orders Petitioner's immediate release.

## I.   BACKGROUND

Petitioner Eldimir Gomes is a citizen of Guinea-Bissau who came to the United States in April 2021. (Am. Pet. 2:25–26, ECF No. 9). He entered without inspection but was arrested near the border on April 29, 2021, shortly after his arrival. (*Id.* 2:26–27); (I-213 at 2, Ex. A to Fed. Resp., ECF No. 14-1). Petitioner was placed in expedited removal proceedings, but after an asylum officer determined that he had a credible fear of persecution or torture, DHS issued a Notice to Appear ("NTA"). (Am. Pet. 2:27–3:2); (Fed. Resp. 1:23–25, ECF No. 14). The NTA,

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted or currently named Kristi Noem. The Clerk of Court is kindly directed to update the docket to reflect these substitutions.

[2] Respondent John Mattos filed a separate Response, (ECF No. 12), indicating that he has no independent authority to release Petitioner, and thus takes no position on the relief sought.

issued on May 26, 2021, charged Petitioner as an "alien present in the United States who has not been admitted or paroled." (NTA, Ex. A to Am. Pet., ECF No. 9-1).  In a Notice to EOIR regarding Petitioner's address, an ICE official indicated that Petitioner was released from ICE custody on bond in the amount of $7,500. (Notice, Ex. B to Am. Pet., ECF No. 9-2).  Petitioner has remained out of custody for approximately four years while his removal proceedings have been pending, during which time he applied for asylum and withholding of removal and established a residence with his wife and children in Utah. (Am. Pet. 3:5–8).

On July 11, 2025, an Immigration Judge ("IJ") denied Petitioner relief and ordered him removed. (IJ Order, Ex. C to Am. Pet, ECF No. 9-3).  On July 30, 2025, Petitioner was charged with misdemeanor assault and arrested. (I-213 at 2, Ex. A to Fed. Resp.).[3]  ICE re-detained Petitioner on August 6, 2025. (Am. Pet. 3:11–12).[4]  Petitioner timely appealed the IJ's removal order on August 11, 2025, and the appeal remains pending. *See* EOIR Automated Case Information.[5]  Petitioner has now been in ICE detention for almost 10 months, and with this Amended Petition, he seeks immediate release from detention. (*See generally* Am. Pet.).

## II.   LEGAL STANDARD

### A.  Habeas Petitions

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure

---

[3] The parties present no evidence corroborating the assertion in the I-213 regarding Petitioner's misdemeanor assault charge, nor do they provide any additional information about the charge.

[4] There is no evidence in the record before the Court relating to when and how ICE detained Petitioner.

[5] The Court takes judicial notice of the information on Petitioner's EOIR Automated Case Information page because it may take judicial notice of information posted on official government websites. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–999 (9th Cir. 2010); Fed. R. Evid. 201 (allowing a court to take judicial notice of a fact not subject to reasonable dispute in that it is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned).

release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### B.  Statutory Detention Scheme

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, two statutory provisions generally govern the government's authority to detain noncitizens during the pendency of removal proceedings: 8 U.S.C. §§ 1225(b) and 1226.  In *Jennings v. Rodriguez*, 538 U.S. 281 (2018), the Supreme Court explained these statutory provisions.  The Court explained that § 1225 generally governs "at the Nation's borders and ports of entry, where the Government must determine whether [a noncitizen] seeking to enter the country is admissible." *Id.* at 287.  In contrast, § 1226 "generally governs the process of arresting and detaining" noncitizens already "inside the United States." *Id.* at 288.

Section 1225 authorizes the government to detain certain noncitizens seeking admission into the United States. *Id.* at 289.  Section 1225(b) applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1).  "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287.

Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* (citing § 1225(b)(1)(A)(i)).  Noncitizens who fall under § 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id.* (citing § 1225(b)(1)(A)(i)).  Section 1225(b)(2) is broader and "serves as a catchall provision that

applies to all applicants for admission not covered by § 1225(b)(1)." *Id.*  Applicants for admission under either § 1225(b)(1) or § 1225(b)(2) are subject to mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit." *Id.* at 288 (citing § 1182(d)(5)(A)).

## III.   **DISCUSSION**

Petitioner has been in ICE custody for approximately 10 months without a bond hearing while in removal proceedings.  He argues that his continued detention without a bond hearing violates his due process rights because he cannot legally be subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (Am. Pet. 4:3–5:16).  Federal Respondents provide no substantive response to Petitioner's legal argument and argue only that the Amended Petition should be denied because Petitioner has not exhausted his administrative remedies before seeking relief in this Court. (*See generally* Fed. Resp., ECF No. 11).  The Court begins by addressing Federal Respondents' exhaustion argument.

### A. Exhaustion

Federal Respondents ask the Court to deny the Amended Petition because Petitioner has not exhausted administrative remedies before seeking relief in this Court, so this issue is not "ripe." (*Id.* 2:14–17).  First, Federal Respondents appear to conflate the concepts of exhaustion and ripeness.  "Article III's ripeness doctrine is designed to 'prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.'" *Flaxman v. Ferguson*, 151 F.4th 1178, 1184 (9th Cir. 2025) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)).  "Constitutional ripeness equates with Article III's injury-in-fact requirement for standing." *Id.* at 1184–85.  "The well-worn prerequisites are an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 1185 (quotation modified) (quoting *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022)).

Here, Petitioner is suffering an injury in fact due to his current detention.  There is nothing abstract or hypothetical about this dispute, and the fact that an IJ has not yet determined his eligibility for bond does not change that fact. *See Alvarado v. Mattos*, No. 2:26-CV-00416-APG-DJA, 2026 WL 963227, at *2 (D. Nev. Apr. 9, 2026) (citing *Galvan v. Hermosillo*, No. 2:25-CV-02349-TMC, 2025 WL 3484755, at *2 (W.D. Wash. Dec. 4, 2025)) (finding the noncitizen detainee's habeas petition was ripe for review where an IJ had not determined the petitioner's eligibility for bond).

As to the issue of exhaustion, Federal Respondents again appear to confuse the issues. Federal Respondents argue that "Petitioner has a pending administrative appeal so that the necessity of detention can be reviewed by the [Board of Immigration Appeals ("BIA")]." (Fed. Resp. 2:17–18).  They assert that Petitioner should have waited for a decision from the BIA before asking this Court to review the IJ's decision.  But Petitioner has only one appeal pending at the BIA, and that appeal is seeking review of the IJ's removal order.  The appeal has no relation to the issue of whether Petitioner should be detained during the pendency of this removal proceedings.  Moreover, Petitioner does not ask this Court to review the IJ's decision on his removal order.  Thus, Federal Respondents' exhaustion argument misses the mark.

To the extent Federal Respondents intended to argue that Petitioner has not exhausted his administrative remedies because he has not requested a custody redetermination, the Court does not agree.  First, Federal Respondents cite no authority to support this argument. Moreover, exhaustion here is a prudential, rather than jurisdictional, requirement. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017).  A court may require prudential exhaustion where:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). But even if these factors weigh in favor of prudential exhaustion, the Court may waive the requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

Here, the Court finds that Petitioner's claims fall into the futility exception. Because Petitioner was arrested near the border, Federal Respondents would likely argue that *Matter of Q. Li*, 29 I & N Dec. 66 (B.I.A. 2025), applies to require Petitioner's mandatory detention. In *Matter of Q. Li*, the BIA held that a noncitizen "who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings, is detained under [8 U.S.C. § 1225(b)], and is ineligible for any subsequent release on bond under [8 U.S.C. § 1226(a)]." *Id.* at 69. Given *Matter of Q. Li* is a precedential decision, the IJ is likely to conclude that Petitioner is detained pursuant to § 1225(b) under that precedent. And because, as a statutory matter, § 1225(b) "mandate[s] detention" and does not allow for release on bond, *Jennings*, 583 U.S. at 297, any bond request under that statute would be futile. *See Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("[W]here the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required."). The Court therefore waives any exhaustion requirement.

**B. Section 1225(b)**

Petitioner asserts that he is being wrongfully detained under 8 U.S.C § 1225(b). Federal Respondents provide no response to this argument and thus concede the merits of Petitioner's challenge. *See, e.g.*, *Pernell v. City of Los Angeles*, 650 F. Supp. 3d. 910, 933 (C.D. Cal. 2022) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

The Court nevertheless analyzes whether Petitioner has been wrongfully detained under § 1225(b)(2).

As described above, detention of noncitizens is governed by 8 U.S.C. §§ 1225–26. Section 1226(a) provides the "default rule," allowing discretionary detention of noncitizens "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). In *Jennings*, the Supreme Court drew a clear line between the two provisions: § 1225 "applies primarily to [noncitizens] seeking entry into the United States," while § 1226 governs "the process of arresting and detaining" noncitizens "already in the country." *Id.* at 287–88. Applicants for admission are generally subject to mandatory detention under § 1225(b) and may be released only on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *Jennings*, 583 U.S. at 287. The Ninth Circuit has also described § 1226 as "provid[ing] the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).

Here, Petitioner was released from ICE detention in 2021 on bond. (Notice, Ex. B to Am. Pet.). He then lived in the interior of the United States for approximately four years. Thus, Petitioner was a noncitizen "already in the country" when he was most recently arrested by ICE. *See Jennings*, 538 U.S. at 287–88. This aligns with how the government has treated Petitioner from the outset: Petitioner's NTA, issued when he was released in 2021, charged him as a noncitizen "present in the United States who has not been admitted or paroled," rather than an "arriving [noncitizen]." (NTA, Ex. A to Am. Pet.). And his release from detention on bond suggests he was likely released under 8 U.S.C. § 1226(a)(2)(A), which allows for release of a noncitizen in removal proceedings on bond. In sum, the facts before the Court support a finding that Petitioner is not subject to mandatory detention under § 1225(b) and is instead subject to discretionary detention under § 1226(a). Federal Respondents make no argument

otherwise. Accordingly, the Court concludes that Petitioner has been wrongfully detained under § 1225(b)(2) mandatory detention for ten months.

### C. Due Process

The Court also finds that Petitioner's detention violates the Due Process Clause of the Fifth Amendment. Under the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Though noncitizens do not enjoy constitutional protections outside the borders of the United States, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Thus, "[i]t is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). But the "recognized liberty interests of U.S. citizens and [noncitizens] are not coextensive: the Supreme Court has 'firmly and repeatedly endorsed the proposition that Congress may make rules as to [noncitizens] that would be unacceptable if applied to citizens." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (quoting *Demore*, 538 U.S. at 522).

To determine whether detention violates due process, courts apply the three-part test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz*, 53 F.4th at 1203–07 ("Ultimately, *Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context.").[6] Under *Mathews*, "identification

---

[6] The Ninth Circuit in *Rodriguez Diaz* "assumed without deciding" that the *Mathews* test applies in due process challenges to immigration detention. 53 F.4th at 1207. However, the *Rodriguez Diaz* court noted that other circuits have applied *Mathews* in considering due process challenges to immigration detention. *Id.* at 1204–05 (citing *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022); *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020)). The court also explained that the Ninth Circuit has regularly applied *Mathews* in due process challenges to removal proceedings. *Id.* at 1206 (citing *Cruz Pleitez v. Barr*, 938 F.3d 1141, 1145–46 (9th Cir. 2019); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160–61 (9th Cir. 2004); *Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004). Accordingly, the Court will apply the *Mathews* test here.

of the specific dictates of due process generally requires consideration of three distinct factors": (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

First, the private interest at stake here "is the most elemental of liberty interests—the interest in being free from physical detention." *Hamdi*, 542 U.S. at 529; *see also Rodriguez Diaz*, 53 F.4th at 1207 ("[A]n individual's private interest in freedom from prolonged detention is unquestionably substantial."). "That interest is especially weighty considering the process he has received, and that was available to him, throughout his months of detention—that is, regarding the government's custody determinations, no process at all." *Melendez Paz v. Mullin*, No. 2:26-CV-00296-RFB-MDC, 2026 WL 1194944, at *5 (D. Nev. May 1, 2026) (citing *Rodriguez Diaz*, 53 F.4th at 1208) (considering the process the immigration detainee had already received during his detention pursuant to § 1226(a) and further process that was available to him in weighing his private liberty interest).

The record before the Court indicates that immigration authorities determined that Petitioner was neither a flight risk nor dangerous when they chose to release him into the United States five years ago. Since then, Petitioner has developed ties in the community—he has applied for asylum and withholding of removal and established a stable residence with his wife and children. (Am. Pet. 3:5–8). Federal Respondents do not rebut any of these facts. The government's decision to "release Petitioner under §1226(a) provided Petitioner with a liberty interest that is protected by the Due Process Clause." *Jaraba Oliveros v. Kaiser*, No. 25-cv-07117-BLF, 2026 WL 1162724 at *4 (N.D. Cal Apr. 29, 2026); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation

status have a liberty interest, so too does [the noncitizen] have a liberty interest in remaining out of custody on bond."); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *He v. Lyons*, No. 3:25-cv-10639-JSC, 2026 WL 280074, at *3 (N.D. Cal. Feb. 3, 2026) (collecting cases). Because Petitioner was released from DHS custody on bond five years ago, he has a strong liberty interest in remaining out of custody.

Second, the risk of erroneous deprivation of Petitioner's liberty is also high, especially given Petitioner has not received any hearing, either pre- or post-detention. The government's current procedures "do not require any individualized determination that Petitioner's detention is justified. Nor is Petitioner provided with a timely opportunity to challenge the government's basis for his arrest and detention under § 1225(b)(2)(A), as, for example, based on a mistake of fact . . . ." *Melendez Paz*, 2026 WL 1194944, at *5. The record before the Court indicates that there was no independent finding of changed circumstances by a neutral arbiter before Petitioner was re-detained. Because there have been no procedural safeguards to determine if Petitioner's re-detention is justified, the probative value of additional procedural safeguards is high.

Third, the final factor of the *Mathews* test considers the "government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal" noncitizens and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. But Respondents have not explained how detaining Petitioner without due process serves these interests. In fact, limiting detention to noncitizens who are shown to be dangerous or a flight risk may serve the

government's and the public's interest by limiting "the fiscal and administrative burdens attendant to immigration detention." *E.C. v. Noem*, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264, at *11 (D. Nev. Oct. 14, 2025); *see also Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (noting that in 2017 "the costs to the public of immigration detention are staggering: $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person."). On balance, the *Mathews* factors weigh in favor of Petitioner, and the Court therefore finds that he is entitled to a pre-deprivation hearing, before any arrest, under *Mathews*.

### D. Relief

Petitioner asks this Court to order his immediate release, or, in the alternative, to order that he receive a bond hearing immediately. (Reply 4:25–5:3, ECF No.). The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." *Carafas v. LaVallee*, 391 U.S. 234, 239 (1968). "Its mandate is broad with respect to the relief that may be granted." *Id.* "It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

Based on the record before it, the Court finds that Petitioner has been subjected to arbitrary, erroneous, and prolonged detention in violation of his statutory and constitutional rights. The Court now turns to determine the appropriate remedy for this matter. *See Sanders v. Ratelle*, 21 F.3d 1446, 1461 (9th Cir. 1994) ("A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus . . . . The court is free . . . to fashion the remedy as law and justice require . . . .") (citations and quotation marks omitted). In doing so, the Court finds that immediate release is the appropriate equitable remedy in this case.

While ordering a prompt bond hearing at which the government bears the evidentiary burden by clear and convincing evidence may be an appropriate remedy in some cases, here the Court declines to keep Petitioner detained as it would not adequately remedy the statutory and constitutional injury he has suffered.  Petitioner has been detained for ten months despite receiving no process prior to his re-detention. (Pet. 2:6–12).  On the record before the Court, it appears Petitioner was arrested and detained without a warrant or initial custody determination as required under 8 C.F.R. § 236.1.  The Court finds that ordering a bond hearing here "would effectively allow the Government to transform an unlawful detention into a lawful one through post-hoc justifications" and would fail to adequately remedy the harms suffered by Petitioner. *Zheng v. Rokosky*, No. 26-CV-01689, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026); *see also, e.g., E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner[ ] received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.").  The Court thus finds "the typical remedy" for "unlawful executive detention"—immediate release from custody—is appropriate here. *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

Additionally, the Court finds that it must adopt equitable remedies to ensure that Respondents provide due process to Petitioner in the future, in the event of Petitioner's re-detention pursuant to § 1226(a). *Cf. Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief."); *United States v. Handa*, 122 F.3d 690, 691 (9th Cir. 1997), *as amended on reh'g* (Aug. 4, 1997)

(describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings).  Here, the Court finds it appropriate to order that in the event of Petitioner's re-detention under 8 U.S.C. § 1226(a), Respondents must provide Petitioner a pre-deprivation bond hearing wherein the government must prove, by clear and convincing evidence, that detention is appropriate under § 1226(a) and its implementing regulations. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024) (reviewing the immigration court's compliance with a district court's order that the government provide an immigration detainee a bond hearing "under the Due Process Clause," which required "the government to show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community at the time of the bond hearing.") (citing *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).

**IV.    CONCLUSION**

**IT IS HEREBY ORDRED** that Petitioner's Amended Petition for Writ of Habeas Corpus, (ECF No. 9), is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner must be released from detention **by May 29, 2026, between 12:00 p.m. and 3:00 p.m.**, subject to his prior conditions of parole.

**IT IS FURTHER ORDERED** that Respondents are prohibited from imposing release conditions that substantially interfere with Petitioner's liberty, such as location monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing.

**IT IS FURTHER ORDERED** that Respondents must return Petitioner's personal property upon his release.

**IT IS FURTHER ORDERED** that, prior to any re-detention of Petitioner, the government must provide no less than seven days' notice to Petitioner and must hold a constitutionally compliant pre-deprivation hearing before a neutral arbiter at which the

government bears the burden of providing flight risk or danger by clear and convincing evidence.[7]  This Order does not address the circumstances in which Respondents may detain Petitioner in the event he becomes subject to an executable final order of removal.

**IT IS FURTHER ORDERED** that the parties shall file a **JOINT** status report by **June 1, 2026**, to certify compliance with the Court's Order.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 25(d), Acting U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted or currently named Kristi Noem.  The Clerk of Court is kindly directed to update the docket as well as the case caption to reflect this substitution.

Counsel for Respondents are directed to immediately provide notice of this Order to the parties they represent.

The Clerk of Court is further directed to **SEAL** the Petition, (ECF No. 1), and Motion for Appointment of Counsel, (ECF No. 2), due to the sensitive information contained therein. The Clerk of Court is further directed to **FILE** the redacted versions of the Petition and Motion for Appointment of Counsel on the docket.

The Clerk of Court is further directed to enter judgment in favor of Petitioner.

**DATED** this __28__ day of May, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court

---

[7] Given Petitioner's prolonged detention in violation of his constitutional rights, and "[b]ecause it is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual'— deprivation of liberty—is so significant," the Court finds it constitutionally necessary to impose this equitable remedy in order to minimize the risk of additional error. *Singh v. Holder*, 638 F.3d 1196, 1203–04 (9th Cir. 2011).